# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MICHAEL CALECA** <br> 12111 Maple Forrest Court, Apt. H <br> Fairfax, VA 22030, <br><br> Plaintiff <br><br> v. <br><br> **U.S. Central Intelligence Agency** <br> William Burns, Director <br> 1000 Colonial Farm Road <br> Langley, Virginia, 22101 <br><br> and <br><br> **U.S. Office of the Director of National Intelligence** <br> Avril Haines, Director, <br> 1500 Tysons McLean Dr. <br> McLean, VA 22102, <br><br> Defendants. | Case No.: _____ <br><br><br><br><br> May 31, 2023 |

## COMPLAINT

COMES NOW Plaintiff Michael Caleca, by and through his undersigned counsel, and brings this civil action against Defendants Central Intelligence Agency and Defendant Office of Director of National Intelligence, ("Defendants") as follows:

### NATURE OF THE CASE

1. In 2003, Plaintiff began working for Defendant Central Intelligence Agency ("CIA"). Since 2004, CIA detailed Plaintiff to Defendant the Office of the Director of National Intelligence ("ODNI").

2. The CIA and ODNI are government agencies involved in gathering, processing, and analyzing national security information from around the world.

1

3. Plaintiff's year of birth is 1966.

4. From 2019 and continuing through his termination on November 3, 2021, Defendants subjected Plaintiff to disparate treatment and a continuing hostile work environment on the bases of his age and/or reprisal for protected EEO activity (informal EEO complaint) by falsely criticizing his work performance, intentionally assigning Plaintiff to projects outside of his areas of expertise, refusing to provide technical assistance, denying him opportunities to work on projects, giving him unfair feedback on performance reviews, and changing performance standards and deadlines, all while treating younger employees more favorably.

5. On February 12, 2021, Defendants placed Plaintiff on a performance improvement plan ("PIP").

6. Immediately after Plaintiff initiated EEO contact on March 19, 2021, Defendants asked Plaintiff not to teach a class on open-source analysis and on June 23, 2021, Defendants issued Plaintiff a failed rating on the PIP.

7. On November 3, 2021, the Defendants notified Plaintiff that they were terminating his employment.

8. Plaintiff brings this action alleging violations of the Age Discrimination in Employment Act ("ADEA").

## VENUE AND JURISDICTION

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

10. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## THE PARTIES

11. At all relevant times herein, Plaintiff was jointly employed by Defendants, and was Defendants' "employee" within the meaning and subject to the protections of the ADEA.

12. Plaintiff resides in Virginia, and formerly worked for Defendants.

13. The CIA is a federal government agency headquartered in Virginia and which has a significant presence in the District of Columbia.

14. ODNI is a federal government agency headquartered in Virginia and which has a significant presence in the District of Columbia.

15. At all relevant times herein, Defendants jointly employed Plaintiff, and were Plaintiff's "employers" within the meaning and subject to the requirements of the ADEA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

16. Plaintiff exhausted his administrative remedies by timely filing a charge of discrimination (Charge No. 570-2023-00125X) with the U.S. Equal Employment Opportunity Commission ("EEOC") on December 13, 2021.

17. On April 22, 2020, Plaintiff timely filed a Formal Complaint against the Agencies on February 25, 2022.

18. On September 22, 2022, Plaintiff received a Report of Investigation, Agency Case No. 22-41.

19. On October 19, 2022, Plaintiff requested a hearing before an EEOC Administrative Judge.

20. On January 5, 2023, the Administrative Judge dismissed Plaintiff's hearing request and remanded the complaint to Defendant CIA for issuance of a final decision.

21. On March 6, 2023, Plaintiff received a Final Agency Decision (FAD) from CIA.

22. On March 9, 2023, Plaintiff received a Final Agency Decision (FAD) from ODNI.

23. Plaintiff timely filed this Complaint within 90 days of receiving the Final Agency Decision.

## STATEMENT OF FACTS

24. Plaintiff was born in 1966.

25. Defendant CIA hired Plaintiff as a Targeting Analyst on October 20, 2003.

26. From 2004 until his termination in November 3, 2021, Plaintiff served in a detail to the Office of the Director of National Intelligence ("ODNI").

27. Plaintiff's first-line supervisor was Branch Chief Mark Demers. On information and belief, Demers is an employee of the Department of the Treasury who is detailed to ODNI.

28. Plaintiff's second-line supervisor was Deputy Group Chief Brandon Beach. On information and belief, Beach is an ODNI employee.

29. At all relevant times, Defendants were aware of Plaintiff's age based on his personnel records, the duration of his experience in analysis, and because he presents as an older male.

### The Agency falsely criticized Plaintiff's performance.

30. In or around May 2019, Plaintiff's supervisors began falsely criticizing his performance and failing to provide timely feedback about his work.

31. For example, Robert Antonellis reviewed a document Plaintiff wrote and did not make any significant edits. However, Mark Demers reviewed the same document on or around May 1, 2019, this time making substantial changes, many of which were unwarranted. Furthermore, Plaintiff's performance appraisal falsely cited the assignment as having been completed in 2020, rather than 2019, giving the impression he had not completed it timely.

32. In or around August 2019, management delayed reviewing another assignment for more than three months, an egregious amount of time for such a review. The intent and effect was to give the false impression that Plaintiff was not efficient with his work.

33. By contrast, Defendants did not subject younger analsysists to such treatment.

### Defendants intentionally assigned Plaintiff to a project outside of his areas of expertise and denied him technical assistance.

34. On or around March 10, 2020, Mark Demers assigned Plaintiff a data science project. He instructed Plaintiff to format the data to ensure there were no errors. Demers knew that the project required technical skills Plaintiff did not have.

35. The Agency has an office that provides data science services, and Plaintiff requested technical assistance in connection with the project. Demers denied Plaintiff's request without explanation.

36. The assignment called on Plaintiff to use a specific data visualization software for this project. Instead of providing training for this, management required Plaintiff to attempt to learn the software on his own, which unnecessarily made the task more difficult and time-consuming. Furthermore, the data visualization software was unable to reconcile the problems with Plaintiff's data set.

37. Management eventually paired Plaintiff with a data scientist to assist with the project. However, the scientist had numerous other projects and was unable to provide required information until three months after Plaintiff requested it. Further, most of the information was incorrect or incomplete.

38. In October 2020 and again in December 2020, on his own initiative, Plaintiff met with two different computer scientists to find solutions to the problems Plaintiff was having with the data project. Neither group could provide solutions as the task was too large for a single individual.

39. In or around January 2021, an Agency data science office said it could provide assistance if there was a specific request from Plaintiff's management. Management refused to make the request. In fact, Demers denied Plaintiff's prior request in June 2020 for their help.

40. Management had no explanation for assigning Plaintiff the project in the first place, or for denying Plaintiff's requests for support and resources.

41. Management engaged in these actions to sabotage Plaintiff because of his age. They did not treat younger employees in a similar way.

**Defendants deny Plaintiff opportunities to work on projects.**

42. In or around March 2020, Defendants' employees began working from home due to the COVID-19 pandemic.

43. Plaintiff requested to come into the office to log into his accounts and retrieve tax information.

44. Management denied Plaintiff's requests and told him to stay home to "protect his health." This was an age-related reference to the CDC guidelines to "older adults" being at increased risk for COVID complications.

45. Management later gave a different reason for refusing to let Plaintiff come to the office. On or around June 7, 2020, Demers revealed in an email that management wanted to keep Plaintiff away from the office because they did want Plaintiff to perform work without supervision.

46. It should be noted that Plaintiff was on duty as an emergency cadre, which requires individuals to perform tasks for the Agency during a time of emergency.

47. Furthermore, the Agency allowed younger employees to come to the office to work on assignments as well as on a rotational basis. This further indicates that the Agency prohibited Plaintiff from coming into the office because of his age.

48. The age-based prohibition on coming into the office negatively affected Plaintiff in several ways.

49. Because Plaintiff was not in the office, he was not assigned to new projects, unlike younger analysts.

50. Additionally, when Plaintiff was eventually allowed to return to the office in late June 2020, he had to review months of reporting on his accounts, which made it more difficult to start performing tasks for his Advanced Work Plan ("AWP"), as discussed below.

51. Younger employees were not forced to play catch-up like Plaintiff was because they were allowed to come into the office during the previous four months.

**The Agency gave Plaintiff unfair performance reviews and assigned him an AWP.**

52. On or around March 5, 2020, Demers, Beach, Dean Caras, and Robert Antonellis assigned Plaintiff an advance work plain (AWP), a sign of performance issues, without warning or explanation.

53. When Plaintiff asked Demers about the rationale behind the AWP, he refused to meet with Plaintiff to discuss the matter.

54. Furthermore, the AWP was purportedly based on Plaintiff's work from October 2019 through the first half of March 2020. During this period, Plaintiff only worked on one project, which management reviewed twice. Management's edits did not indicate any issues relating to critical thinking, analysis, argument construction, tradecraft issues, or Plaintiff's writing.

55. Not only was the AWP unwarranted, but it was also implemented to set Plaintiff up for failure.

56. The AWP did not take into consideration that Plaintiff was only coming into the office once every two weeks due to COVID restrictions. Therefore, Plaintiff only had 40 business days to finish a "90- day" AWP.

57. In addition, Demers deliberately delayed reviewing Plaintiff's work for the AWP (i.e., from July through September 2020) to ensure Plaintiff would fail the AWP. For example, although Plaintiff submitted a report to Demers for review on or around July 7, 2020, it took him more than two weeks to provide changes or input. This placed Plaintiff in jeopardy of failing the timelines of the AWP.

58. Demers also failed to follow defense intelligence (DI) tradecraft by refusing to allow Plaintiff to apply all source analysis practices and by providing unclear and incorrect feedback.

59. This constituted age discrimination because, in addition to assigning younger analysts numerous projects, Demers also reviewed their work more promptly.

**The Agency changed performance standards and deadlines.**

60. From July 2020 to October 2020, management repeatedly changed project standards and delayed reviewing Plaintiff's work so that he would miss deadlines.

61. For example, when working on the AWP, Demers forced Plaintiff to change the methods Plaintiff used to provide analysis, which violated analytic tradecraft protocols, such as procedures for developing specific analytic lines, using all source analysis, and reviewing the data for errors or other discrepancies.

62. In the past, when Plaintiff was younger, management had not criticized his analytical methods. In fact, Plaintiff was asked to teach a class on open-source analysis related to tradecraft to new analysts.

63. Plaintiff continued to teach this class when requested until management bypassed him in favor of another analyst to present this class in or around March 2021. This occurred at approximately the same time Plaintiff filed his Informal EEO Complaint and began

expressing concerns about his work standards to management, including Mark Demers and Brandon Beach.

64. Management did this to set Plaintiff up for a poor performance rating and to try to force him to retire.

65. Management did not apply the same standards to younger analysts.

**Demers made false derogatory statements about Plaintiff's work.**

66. In an email he sent on or around August 23, 2020, Demers claimed it took him 33 hours to edit 10 pages of Plaintiff's work. This could not be true.

67. Plaintiff raised the issue to Dean Caras on or around September 10, 2020, and again on or around September 25. On both occasions, Plaintiff stated that Demers's review of his work was wrong.

68. During a review of Plaintiff's performance appraisal report (PAR) on or around November 10, 2020, Plaintiff asked Demers to provide proof that it took him 33 hours to edit Plaintiff's work. He refused.

69. On or around January 28, 2021, Dean Caras sent an email stating that Plaintiff's suggestion that Demers "lied" about how long it took him to edit Plaintiff's work would not be tolerated. Plaintiff replied that he would meet with everyone to discuss the issue.

70. Management called Plaintiff to a meeting on February 5, 2021, which was attended by Caras, Beach, Antonellis, Demers, and Agency HR representative Jennifer Wachunas. At the meeting, Dean Caras accused Plaintiff of being abusive with management and reiterated the averment that it had taken Demers 33 hours to review Plaintiff's work.

71. Plaintiff did apologize for using the word "lie," but reaffirmed his contention that the statement made by Demers, that it took him 33 hours to edit 10 pages of work, could not

be so, and he was willing to discuss the matter in the meeting. All the managers refused Plaintiff's request to discuss the issue.

### The Agency placed Plaintiff on a PIP.

72. On or around February 12, 2021, Dean Caras and Brandon Beach placed Plaintiff on a performance improvement plan (PIP) from February 15, 2021, to May 15, 2021.

73. However, they would not give Plaintiff a copy of the PIP or even show it to him.

74. Plaintiff later learned that management extended the PIP by another two weeks; however Plaintiff still did not receive a copy of it.

75. A PIP is meant to provide an employee with clear, explicit expectations and goals, so the employee is on notice of what he needs to achieve during the PIP period to pass.

76. However, throughout the PIP, Beach and Demers failed to provide necessary information about assignments, and as stated, would not even provide Plaintiff with a copy of the PIP, evincing the reality that this PIP was a sham.

77. Moreover, management stifled Plaintiff's ability to perform throughout the PIP period. For example, on or around February 15, 2021, Plaintiff was assigned a targeting task. However, the project was unnecessarily delayed because management incorrectly stated that using certain terms and definitions was not in keeping with current tradecraft. Plaintiff pointed out that assignments from another office did use those terms, but management refused to acknowledge this fact. Mark Demers and Brandon Beach later criticized Plaintiff for failing to use "the proper terminology" for the work. On information and belief, younger analysts used such language without being criticized.

78. Demers also failed to timely review Plaintiff's work. On or about February 25, 2021, Demers delayed moving Plaintiff's piece on to upper management for five days because of

10

the terminology dispute described above.

79. The PIP required Plaintiff's work to be finished within three weeks (conceptualize work, provide a written draft, coordinate the draft and obtain approval from all four managers), but Plaintiff's work schedule only allowed him to work three days a week. Any delay severely impacted Plaintiff's ability to meet PIP deadlines.

80. Furthermore, there were no provisions in the PIP to address delays concerning coordination with other offices and agencies. Plaintiff asked for some language to address this contingency into the PIP allowing for deadline extensions when coordination took longer to complete; however, Demers refused.

**Demers routinely returned younger analysts' work within a few hours or days.**

81. Demers' delays in reviewing Plaintiff's work also impacted another project that Plaintiff started on or about March 20, 2021. These delays were beyond Plaintiff's control and prevented him from meeting timelines.

82. In addition, Demers refused to intervene when on or around April 28, 2021, another office pushed back on Plaintiff's work for unclear reasons. However, he readily intervened and supported younger officers in similar disputes.

83. Beach also provided confusing and inaccurate feedback during the PIP. At a weekly meeting on or around April 14, 2021, Beach claimed that Plaintiff's work contained parallelisms because of how Plaintiff structured a paragraph; yet parallelism refers to improper use of subject and verb agreements, not the structure or organization of a paper.

84. Moreover, a senior analyst independently reviewed this same work on or around April 4, 2021, and found it to be solid in its analysis and ready for passage to tradecraft review and then publication.

85. During a meeting on or around April 20, 2021, Plaintiff told Demers that he was concerned about management failing to properly review Plaintiff's documents. Demers dismissed Plaintiff's legitimate concerns and chastised Plaintiff for allegedly being argumentative.

### The Agency gave Plaintiff a failed rating on the PIP.

86. On or about June 23, 2021, Mark Demers and Brandon Beach told Plaintiff that he failed the PIP.

87. Demers and Beach included numerous misstatements in the PIP review.

88. As stated above, Plaintiff never received a copy of the PIP despite his repeated requests. Management never provided Plaintiff written notice of what he was required to do to demonstrate successful performance.

### The Agency terminated Plaintiff.

89. On October 6, 2021, the Agency notified Plaintiff that the Performance Review Board would convene to review his suitability for continued employment on October 26, 2021.

90. The Agency made an adverse determination regarding Plaintiff's suitability for continued employment on October 2, 2021.

91. Between August and October 2021, Agency management denied or hindered Plaintiff's ability to take beneficial reassignment opportunities which would have enabled Plaintiff to avoid being wrongfully terminated.

92. On November 3, 2021, Plaintiff was informed by the Agency that it was terminating his employment.

### COUNT I:

### (Age discrimination in violation of the ADEA)

93. Plaintiff repeats and realleges paragraphs 1 – 92, as if fully set forth herein.

94. From 2019 and continuing through his termination on November 3, 2021, Defendants

subjected Plaintiff to disparate treatment and a continuing hostile work environment on the basis of his age by falsely criticizing his work performance, intentionally assigning Plaintiff to projects outside of his areas of expertise, refusing to provide technical assistance, denying him opportunities to work on projects, giving him unfair feedback on performance reviews, and changing performance standards and deadlines.

95. On February 12, 2021, Defendants placed Plaintiff on a PIP and prevented him from passing it.

96. On March 19, 2021, Defendants asked Plaintiff not to teach a class on open-source analysis.

97. On June 23, 2021, Defendants issued Plaintiff a failed rating on the PIP.

98. On November 3, 2021, the Defendants notified Plaintiff that they were terminating his employment.

99. By and through its conduct, Defendants willfully violated the ADEA.

100. Defendants acted with malice or reckless indifference to Plaintiff's rights.

101. As a result of Defendant's unlawful actions, Plaintiff has suffered damages including but not limited to lost wages and benefits, pecuniary damages, pain and suffering.

## COUNT II:

**(Retaliation for prior protected activity in violation of the ADEA)**

102. Plaintiff repeats and realleges paragraphs 1 - 92, as if fully set forth herein.

103. Plaintiff engaged in EEO activity when he made a complaint to Defendants' EEO office regarding claims age discrimination.

104. Defendants willfully retaliated against Plaintiff because of his prior protected activity in violation of the ADEA.

105. Defendants acted with malice or reckless indifference to Plaintiff's rights.

106. As a result of Defendant's unlawful actions, Plaintiff has sustained damages

including but not limited to lost wages and benefits, pecuniary damages, pain and suffering.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests that this Court enter judgment against Defendants on all Counts, and award Plaintiff lost wages and benefits; pecuniary damages; compensatory damages; punitive damages; liquidated damages in an amount equal to Plaintiff's lost wages, benefits, and other compensation; liquidated damages in the amount of Plaintiff's pecuniary damages; an amount equal to the tax on any award; costs; attorney's fees; and any such other relief as the Court deems just and proper.

Respectfully submitted,
Alan Lescht and Associates, P.C.
By: /s/J. Cathryne Watson
J. Cathryne Watson (#1032640)
Caroline M. Whitlock (#1780939)
1825 K Street, N.W.
Suite 750 Washington, D.C. 20006
Tel:  (202) 315-1732
Fax: (202) 463-6067
cathryne.watson@leschtlaw.com
caroline.whitlock@leschtlaw.com
*Counsel for Plaintiff*